In re Robert R. J. FLICK a/k/a Robert R. Flick, Debtor.

COMMONWEALTH of PENNSYLVANIA by its Attorney General Harvey Bartle, III, Plaintiff,

v.

Robert R. FLICK, Defendant.

Bankruptcy No. 80–02035T(13).
Adv. No. 81–0282.

United States Bankruptcy Court, E. D. Pennsylvania.

Oct. 29, 1981.

Mitchell W. Miller, Philadelphia, Pa., for debtor.

Michael F. Butler, Allentown, Pa., for the Commonwealth of Pennsylvania.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently before us in this case are two matters which are closely related, and which can be disposed of by one opinion and order. One matter concerns objections to confirmation of debtor's Chapter 13 plan; the other matter concerns relief from the automatic stay imposed by 11 U.S.C. § 362 (1979). For reasons more fully given below, we will dismiss both the objections to debtor's plan, and the complaint for relief from the stay.[1]

The facts of this rather complex case are as follows:[2]

The debtor in this case is Robert R. Flick [hereinafter, the debtor.] The only other major party is the Commonwealth of Pennsylvania, by the Bureau of Consumer Protection [hereinafter, the Commonwealth.]

In 1973, and again in 1974, the debtor entered into consent decrees in settlement of legal action taken against him by the Commonwealth for alleged violations of the Pennsylvania unfair trade practices law.[3] In 1976, The Lehigh County Court of Common Pleas determined that the debtor had violated the terms of the consent decrees, and entered an order assessing civil penalties against the debtor in the amount of $34,000.

Debtor appealed the above order; the Commonwealth Court affirmed the Common Pleas judgment,[4] and the Pennsylvania Supreme Court denied further appeal. Following the supreme court's refusal to hear the appeal, the Lehigh County Court of Common Pleas entered an order directing the debtor to pay the $34,000 or face arrest for contempt.

Scant hours before his arrest would have occurred, debtor filed a voluntary petition seeking relief under Chapter XIII of the now repealed Bankruptcy Act [hereinafter, the Act.] The Commonwealth thereafter actively resisted the debtor's attempt to obtain relief under the bankruptcy laws; they objected to the confirmation of his Chapter XIII plan, and, as a result, Flick was adjudicated a bankrupt by this court in December of 1978. The Commonwealth then sought relief from the automatic stay, and that relief was granted by this court in August, 1980. *In re Flick*, 5 B.R. 637 (E.D. Pa.1980).

Debtor then began an appeal of our order in that case. However, on August 18, 1980, only four days after the entry of our order granting the Commonwealth relief from the stay, the debtor filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. 11 U.S.C. §§ 101–1330 (1979) [hereinafter, the Code.] The appeal of the order granting relief from the stay was abandoned by the debtor shortly thereafter.[5]

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

2. A more detailed set of facts is set forth in our opinion in *In re Flick*, 5 B.R. 637 (E.D.Pa.1980).

3. The full title of the law is the Unfair Trade Practices and Consumer Protection Law, Pa.

Stat.Ann. tit. 73, §§ 201–1 to 201–9.2 (Purdon 1980).

4. *Commonwealth v. Flick*, 33 Pa.Cmwlth. 553, 382 A.2d 762 (1978).

5. Upon the withdrawal of the appeal, only the ministerial function of entering the discharge order remained before the Act case could be

On October 1, 1980, the debtor filed a plan which listed the $34,000 judgment as the debtor's only liability, and which provided for 36 payments of $200 each as the adjustment of that debt.[6] Debtor began making payments under that plan to the standing Chapter 13 trustee.

On February 23, 1981, the Commonwealth filed a document titled "In the Alternative: Motion to Dismiss: Complaint for Declaratory Judgment: Motion for Vacation of Stay" [hereinafter referred to as, the Complaint.] The Complaint contained alternative causes of action: Count I was titled "In the nature of objections to confirmation of the plan and a motion to dismiss the debtor's petition;" Count II was titled "In the nature of a declaratory judgment;" Count III was titled "Alternative relief requesting relief from the stay." The Complaint contained a prayer for relief which requested that this court reject the debtor's plan or dismiss the debtor's petition, or alternatively, enter a declaratory judgment to the effect that neither the automatic stay nor any other provision of the Code prohibits the Commonwealth from enforcing the still outstanding order of the Common Pleas Court directing debtor to pay the $34,000 or face arrest, or, in the alternative, that this court lift the stay to permit enforcement of the above mentioned order.

On May 25, 1981, the meeting of creditors was held pursuant to 11 U.S.C. § 341 (1979). The debtor was examined by the Commonwealth and the standing Chapter 13 trustee. The trustee thereafter filed his report as required by 11 U.S.C. § 1302(b)(1) (1979); the report requests that the debtor's plan be confirmed, as the plan has (in the trustee's opinion) met the requirements of 11 U.S.C. § 1322 (1979) and 11 U.S.C. § 1325 (1979).

On June 25, 1981, the debtor filed an answer to the Commonwealth's objections to confirmation. The debtor has also filed pleadings which relate to the remaining substantive claims contained in the Complaint. Specifically, the debtor has filed a document labeled "Motion for a More Definite Statement, Motion to Strike, and/or Motion to Dismiss."

The preliminary and final hearings on both the Commonwealth's objections to confirmation and debtor's preliminary motions were consolidated, and held together on May 11, 1981. That hearing was continued until June 25, 1981, at which time both hearings were concluded, and both matters taken under advisement. Both parties have submitted several briefs on the issues in both matters.

## OBJECTIONS TO CONFIRMATION

As stated above, the first count of the Complaint is in the nature of objections to confirmation and a motion to dismiss the case. Because our resolution of this initial matter could obviate the need for us to consider the adversary matter and the substantive claims therein regarding the automatic stay, we will consider the objections to confirmation first.

Preliminarily, we feel it necessary to discuss a matter, only tangentially considered by the parties, which we feel is extremely important to our resolution of the issues before us. That matter is the allocation of the burden of proof.

The general rule in civil litigation is that the moving party has the ultimate burden of proving the allegations upon which he bases his action. See, e. g. R.Bankr.P. 407, Advisory Committee Notes; House Rep. No. 95–595, at 308, U.S.Code Cong. & Admin.News 1978, p. 5787.

Although we have found no statutes or cases which bear directly on the issue of

closed. That discharge, specifying that only debts deemed to be dischargeable under the Bankruptcy Act would be discharged, was entered by this court on December 19, 1980. Flick's original Act case, therefore, is no longer open or pending.

6. The debtor has since amended his plan to include four other unsecured creditors. All other debts (he asserts) were discharged in his Chapter VII case.

the burden of proof regarding objections to confirmation of a Chapter 13 plan,[7] we see no reason why the rule in this instance should be any different from the general rule for other civil litigation. Therefore, we conclude that the party objecting to the confirmation of a Chapter 13 plan has the ultimate burden of proving allegations, such as these, upon which he bases his objections. We further conclude that this burden includes an initial burden of going forward with evidence to support those allegations. We recognize that in some instances the burden of producing evidence may shift from opponent to opponent, *Sabatino v. Curtiss Nat. Bank of Miami Springs*, 446 F.2d 1046 (5th Cir. 1971); *In re Tomeo*, 1 B.R. 673 (E.D.Pa.1980), but that general proposition does not affect the more specific burden of proof in this case.

The gravamina of the Commonwealth's objections are: 1) that debtor is ineligible for relief under Chapter 13 because he is not "an individual with regular income;" 2) that the debtor's petition and plan were not proposed, nor *filed*, in good faith; and 3) that Section 403(a) of Title IV of Public Law 95–598, (the Savings Provision), prohibits the filing of a Code 13 petition while an Act Chapter VII case remains open.

The debtor answered and denied the above allegations, and demanded proof at the hearing on the objections. We will consider the objections seriatim.

## 1. DEBTOR'S ELIGIBILITY TO FILE A PETITION.

The Commonwealth claims that the debtor is not an individual with regular income, and thus not eligible for relief under Chapter 13, see, 11 U.S.C. § 109(e) (1979).[8] At the hearings on this matter, the Commonwealth presented no evidence to suggest that debtor is not eligible for an adjustment of his debts under Chapter 13 of the Code.

Debtor, however, offered as evidence the trustee's report. The report states, *inter alia*, that the debtor was examined by the standing trustee, that in the standing trustee's opinion the plan meets the requirements of 11 U.S.C. § 1325 and all other applicable sections of title 11, and that the trustee has no information or belief that the discharge should be denied. The debtor argues that these statements are evidence that the debtor is eligible to file a Chapter 13 petition.

In the absence of any evidence to the contrary, we have no hesitation in finding that the debtor is an individual with regular income and thus eligible to file a Code Chapter 13 petition and plan. The Commonwealth relies upon bare allegation, unsupported by any evidence, in its claim of ineligibility.

---

7. One commentator has offered this explanation of the allocation of burden of proof in the instance of objections to the confirmation of a Chapter X Arrangement under the now repealed Bankruptcy Act.

> Where the ground of objection is that the plan is not for the best interest of creditors or that the plan is not feasible, it would seem that the initial burden of satisfying the court should indeed remain with the debtor. But where the grounds are that the provisions of the plan have not been complied with or that the debtor has been guilty of an act or failed to perform a duty which would bar the discharge of a bankrupt or that the proposal and its acceptance are not in good faith and have been made or procured by any means, promises, or acts forbidden by the Act, the proper view would seem to be that the burden of proof rests upon the objecting party.

9 Collier on Bankruptcy ¶ 9.21[3] at 329 (14th ed. 1978).

8. Section 109(e) of the Bankruptcy Code provides:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less that $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,-000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under Chapter 13 of this title.

## 2. DEBTOR'S PLAN AND PETITION NOT FILED IN GOOD FAITH.

▮ The Commonwealth's contention in this respect is that the debtor's filing was not for the purpose of adjusting his debts, but to subvert this court's order lifting the stay in the then pending Act Chapter VII case. The Complaint lists the entire history of the debtor's legal battles with the Commonwealth, in this Court and others, and implies that this history demonstrates debtor's bad faith. The Complaint also reminds the court of the purposes of the provisions of the Bankruptcy Code and the policy they serve.

However, we cannot say that debtor has proposed his plan in bad faith, because we have no evidence with which to support the Commonwealth's allegations. Again the Commonwealth has offered no testimony or other evidence to prove that what they say is true.

Debtor again offers the trustee's report as evidence of the trustee's belief that the plan was filed in good faith. Debtor again argues that after examination by the trustee, the trustee concluded that the plan met the requirements of 11 U.S.C. § 1325 (1979). Section 1325 requires that the court confirm the plan if it is filed in good faith. Therefore, the debtor argues, the trustee believes the plan was proposed in good faith.

We believe, initially, that there is no requirement that the petition be *filed* in good faith. There is no statutory requirement that the petition be filed in good faith, nor have we been directed to any cases which suggest such a result. While it is true that Chapter X of the Bankruptcy Act had provisions that the petition be filed in good faith (see, former 11 U.S.C. § 541 (1938; Rule 10–113(a)), no such provision was incorporated into the Code. Indeed, there appears only a requirement that the *plan* be *proposed* in good faith. We are not prepar-

ed to find that debtor's petition must be filed in good faith where no factual basis has been established to support such a conclusion. We conclude the debtor's plan was proposed in good faith.

## 3. THE SAVINGS PROVISION.

▮ The Commonwealth alleges in its objections to confirmation that the debtor is prohibited from filing a Code Chapter 13 petition while an Act Chapter VII case is still open by the provisions of Section 403 of title IV of the Bankruptcy Reform Act of 1978, Pub.L.No.95–598.[9]

Again, the Commonwealth has presented no evidence regarding this allegation, nor has it argued or supported its position in its briefs. We cannot and will not invoke a provision that would seek to invalidate debtor's attempt to adjust his debts when that provision has seemingly been abandoned by the party invoking it. Again, we have no factual bases upon which to support a legal conclusion. The Commonwealth offers no support for its claim that Section 403 prohibits a subsequent Code Chapter 13 filing while a Act Chapter VII remains technically open, nor are we willing to so find without proper proof and adequate legal argument and citation of precedent.

We conclude that Section 403 of title IV of the Bankruptcy Reform Act of 1978, Pub.L.No.95–598 does not, in these circumstances, prohibit the debtor from filing a petition and plan under Chapter 13 of the Bankruptcy Code.

## 4. CONCLUSION.

After consideration of the above discussion, we conclude that the Commonwealth's objections to the confirmation of the debtor's plan do not lie, and they shall be dismissed.

---

9. Section 403 of title IV, Transition, of the Bankruptcy Reform Act of 1978, provides:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

We have no reason to believe that the debtor is not eligible to file a petition seeking relief under Chapter 13 of the Bankruptcy Code, nor do we believe that the debtor's plan fails to comply with the substantive provisions of 11 U.S.C. § 1322 (1979) and 11 U.S.C. § 1325 (1979). We believe the plan has been proposed in good faith, and not by any means forbidden by law.

We find that the debtor has made and continues to make payments under the plan, and is and will be able to comply with the plan. We shall, therefore, enter an order directing that the debtor's plan be confirmed.

## THE COMPLAINT

We now turn to the remaining substantive claims and allegations of the Complaint.

Count II of the Complaint is titled "In the nature of a declaratory judgment," and it seeks an order declaring that the enforcement of the Order of the Lehigh County Court of Common Pleas (providing for the arrest and incarceration of the debtor until he pays the $34,000) is not subject to the automatic stay provisions of 11 U.S.C. § 362 (1979).

Count III of the Complaint prays for the alternative relief of vacation or modification of the stay to allow enforcement of the above mentioned Common Pleas Order. The Count restates as reasons for relief of the stay all of the alleged causes of action contained in the objections to confirmation, i. e.: plan and petition not filed in good faith; that the plan was interposed merely for purposes of delay; debtor not eligible for Chapter 13, etc.

The debtor has filed several motions with regard to the Complaint. Presently before us are the debtor's "Motion for a More Definite Statement, Motion to Strike and/or Motion to Dismiss." The debtor ob-

jects to the "redundant, immaterial, impertinent and scandalous material . . ." contained in the Complaint. Much of the material complained of is a detailed history of the Commonwealth's prosecution of Flick under the unfair trade practice law, and a procedural history of his lengthy bankruptcy proceedings.

A preliminary hearing on the debtor's motions was held on May 11, 1981, at which time it was consolidated with the final hearing and continued until June 25, 1981. Oral argument was heard on the motions, but no evidence was offered or admitted. The matter was taken under advisement pending the receipts of briefs of counsel.

After consideration of all the arguments offered in this case, and based upon our confirmation of the debtor's plan today, we conclude that the automatic stay does apply to the Commonwealth in this instance, and that the request for relief from stay is not a valid claim for relief, and is moot.

With regard to the requested declaratory judgment, we believe that the enforcement of the order of the Common Pleas Court is precisely the type of action intended to be stayed by the automatic stay. We rely upon 11 U.S.C. § 362(b)(5) (1979),[10] which states that the automatic stay of 11 U.S.C. § 362(a)(2) (1979) remains in effect against the enforcement of a money judgment.

Unlike our analysis in our first *Flick* opinion (see, *N.2, supra*), under the Code we need not first decide the issues of dischargeability, provability and allowability in order to determine whether a particular action is subject to the automatic stay. We believe that the statute applies directly to the case at hand. The Commonwealth is seeking to enforce the payment of a judgment rendered against the debtor for $34,-000. The fact that the judgment is based upon violations of a consent decree relating

---

10. Section 362(b)(5) of the Bankruptcy Code provides:

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

to enforcement of an unfair trade practices law only convinces us that this is the instance that Congress foresaw in enacting Section 362(b)(5). Clearly, this is the instance of a judgment obtained in an action by a governmental unit to enforce that governmental unit's regulatory power. The important fact is that this is a money judgment, in the nature of a civil penalty,[11] that is sought to be enforced. We conclude that the automatic stay imposed by Section 362(a) shall remain in force against the Commonwealth.

We now turn to the Commonwealth's final prayer for relief, vacation or modification of the stay. Because we have today confirmed the debtor's plan over the Commonwealth's objections, we believe the request for relief of the stay is no longer a viable claim, and has become moot.

The Commonwealth's position fails to take into account the provisions of 11 U.S.C. § 1327 (1979).[12] That section provides, *inter alia*, that the terms of the confirmed plan bind both the debtor and the creditor, and controls any claims of the creditor, as adjusted by the plan. The creditor is bound by the confirmed plan whether or not he has objected to the plan.

As so succinctly stated in *In re Lewis*, 8 B.R. 132 (D.Idaho 1981), "[t]he Order of Confirmation is thus res judicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation". *Lewis*, at 137.

No other result is logically consistent. It is inconceivable that any court would confirm a plan providing for the payment of a claim and then allow that claim to be en-

forced outside the plan absent some subsequent aggravating circumstance. For this reason we believe that the remaining count of the Commonwealth's Complaint fails to state a valid claim, and has become moot by the confirmation of the plan.

For all the above reasons, we hereby grant the debtor's motion to dismiss the Complaint.

---

11. As noted in *In re Flick, supra* at 641, the civil penalty was imposed for violation of consent decrees, such violation constituting contempt. However, the state courts have determined that this contempt is not the type of contempt which seeks to vindicate the dignity and authority of the court.

12. Section 1327 of the Bankruptcy Code provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has

objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.